IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TAWANA RENEE LEWIS,

      Plaintiff,

vs.                                    CASE NO. 1:17-cv-62-MW-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of Social Security

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for supplemental security income ("SSI") pursuant to Title XVI

of the Social Security Act. (ECF No. 1.) The Commissioner has answered

(ECF No. 9), and both parties have filed briefs outlining their respective

positions. (ECF Nos. 20, 22.) For the reasons discussed below, it is

recommended that the Commissioner's decision be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed her application for SSI on December 14, 2012, alleging

disability beginning December 5, 2012, due to a back injury, asthma, and

depression. (R. 292-97, 325.)   At the time of her application, Plaintiff

reported that her weight was 260 pounds.  *Id*. at 325.  Her application was denied initially and upon reconsideration. (R. 134-39, 145-49.) Following a hearing on September 4, 2015, an administrative law judge ("ALJ") issued a decision unfavorable to Plaintiff. (R. 15–34.) The Appeals Council denied Plaintiff's request for review. (R. 1–4.)

Plaintiff then filed the instant appeal. (ECF No. 1.)  Plaintiff argues that she should have been found disabled because the ALJ's residual functional capacity ("RFC") finding is not supported by the record, in light of her morbid obesity, back pain, and radiculopathy which precludes her from standing for six hours out of an eight-hour workday.  Plaintiff also argues that the ALJ erred in assessing Plaintiff's credibility.  (ECF No. 20.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. § 404.1505 (2015).[1] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 404.1520. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, she is not disabled. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

---

[1] All further references to 20 C.F.R. will be to the 2015 version, unless otherwise specified.

disabled. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. §§ 404.1520(e)–(f). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. § 404.1520(g).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[2]

---

[2] In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

*Id.* (internal citations omitted).

# III.  SUMMARY OF THE RECORD

## A.  ALJ's Decision

The ALJ determined that Plaintiff has the severe impairments of sciatica, inflammatory arthritis, right cubital tunnel syndrome, obesity, mood disorder, and panic disorder.  R. 20.  Plaintiff does not have an impairment or combination of impairments that meets or equals the listings. The ALJ determined that Plaintiff has the RFC for light work, with additional postural and mental limitations.  The ALJ concluded that Plaintiff's subjective complaints regarding the limiting effects of her impairments were not entirely credible, in view of the objective medical evidence which reflected very conservative treatment, and in view of the evidence reflecting her ability to perform ADL's such as caring for her personal needs, driving, shopping for necessities, preparing simple meals, handling finances, and following written and spoken instructions.  R. 23-24.  To support this finding, the ALJ extensively discussed the relevant medical evidence, including the assessment of an examining consulting physician, Dr. Humphreys, and the opinions of non-examining consultants, who concluded that Plaintiff could perform work at the medium exertional level. In finding that Plaintiff had the RFC for a reduced range of light work, the

ALJ explained that he did so out of an abundance of caution and viewing Plaintiff's subjective complaints in a light most favorable to her.  R. 27.

Plaintiff had no past relevant work.  Based upon the testimony of a VE, the ALJ determined that in view of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as office helper, marker, and mail clerk.  The ALJ therefore found that Plaintiff was not disabled.  R. 28-29.

## B.  Medical and Opinion Evidence

Plaintiff's arguments on appeal focus on asserted disability stemming from her obesity, back pain, and radiculopathy which she contends prevent her from standing for six hours in an eight-hour workday, as required to maintain full-time employment.  (ECF No. 20 at 27.)  Therefore, the Court's summary of the evidence focuses on those impairments.

Plaintiff was treated at UF Physicians in 2012 for complaints of back, hip, and leg pain and history of falls as well as other conditions, such as asthma, that are not relevant to her appeal.  At one visit, Plaintiff reported that her problems started following a motor vehicle accident in 2008. Plaintiff stated that the falls occurred because her left leg gave away.  R.

416.  In April 2012, Plaintiff presented with a right arm injury due to a fall

on her stairs.  R. 422-23.  In May 2012, Plaintiff related that her symptoms

were initially on the left side but had progressed to the right.  She

complained of right leg weakness resulting in falls.  Her neurological exam

was positive for weakness.  R. 419-21.  As of June 2012, Plaintiff was not

willing to repeat imaging studies that reportedly were done in the past.

Plaintiff complained of weight gain, but stated that she was unable to

exercise due to falls.  R. 416-18.

Following her application for SSI, Plaintiff sought care at UF Health's

neurology clinic in December 2012 for lower back and right leg pain.

Plaintiff related a history of being hit by a patient in 2008 when she was

working as a CNA, resulting in a back injury.  She alleged inability to sit for

long periods, frequent falling, right leg weakness, and right hip pain.  R.

390.  Plaintiff had a positive straight leg raising test, but all other tests

reflected 5/5 strength in upper and lower extremities.  The physician

expressed concern about L5-S1 radiculopathy, and the plan was to order

imaging of the lumbar spine and hip.  Plaintiff's weight was reported as 265

pounds.  The neurologist prescribed Mobic for pain.  R. 392-93.

At a followup visit with her family practitioner, Plaintiff's physical

examination findings were normal and her psychiatric status was assessed as normal. Plaintiff reported some relief from the Mobic.  R. 396-97. Plaintiff did not follow up with the neurologist's recommendation to undergo objective testing.

In January 2013, Plaintiff underwent a consultative psychological examination with Janet Humphreys, Ph.D.  R. 455-57.  Plaintiff reported depression, anxiety, irritability, episodes of panic, and sleep difficulties. But she was not undergoing treatment with any psychotropic medication. She stated that she had been treated with Celexa around 2009, but her doctor had discontinued the treatment due to her panic attacks.  Plaintiff reported that she can care for her personal needs except that she needs assistance when her pain is severe.  She could drive short distances, shop using a grocery cart for support, cook, and clean her home.  She reported that she spent her days watching television and reading.  Plaintiff's son stays with his grandmother 2-3 days a week, and is also cared for by Plaintiff's boyfriend.  Plaintiff reported that she graduated from high school and took community college classes until her son became ill.  Plaintiff told Dr. Humphreys that she suffers from back pain due to an injury, right leg weakness, and hip pain from a fall.  R. 455-56.

Dr. Humphreys observed that "[n]o peculiarity of gait or involuntary movement was noted."  Following her behavioral and mental assessment, Dr. Humphreys diagnosed Plaintiff with mood disorder NOS, panic disorder without agoraphobia, and pain disorder associated with both psychological factors and a general medical condition.  Plaintiff seemed capable of managing her own funds.  R. 457.

Plaintiff sought care from her primary physician in July 2013 for an ear problem and after finding out that she was pregnant.  She was diagnosed with jaw tenderness.  R. 527-29.  Plaintiff's gait was normal, her mood was stable, and her neurological exam was normal.  Her weight was noted at 257 lb.  *Id*.  Plaintiff received treatment later in 2013 related to her asthma.  The 2013 records do not reflect that Plaintiff expressed any significant complaints of pain.  Treatment recommendations included exercising five times per week for at least 30 minutes.  *Id*. at 504-45.

Plaintiff was treated for various complaints in January and February 2014, including sciatica.  Diagnostic imaging was negative and there were no identifiable causes for her sciatica.  Examinations were unremarkable, reflecting normal gait and extremities.  Although Plaintiff's treating physician recommended physical therapy to address Plaintiff's pain

symptoms, Plaintiff declined.  R. 483-524.

Examinations in April and June 2014 for complaints unrelated to this appeal, which Plaintiff attended with her infant daughter, were likewise unremarkable, reflecting normal gait and extremities.  R. 459-503.

Plaintiff was treated in late 2014 for pain complaints, including at UF Orthopedics for complaints of hand pain.  Records reflect a history of right cubital tunnel syndrome.  In December 2014, Plaintiff's gait was normal and although she complained of tenderness in her fingers and wrist she demonstrated full range of motion.  She was referred to a rheumatologist. R. 459-503, 546-95.

In January 2015, Plaintiff was examined by a rheumatologist for complaints of pain, stiffness, and joint swelling.  Examination revealed full strength of all extremities and minimal swelling.  It was noted that prior testing and imaging was negative for erosions or evidence of damage.  The physician concluded that her presentation was most consistent with inflammatory arthritis, and that obesity contributed to her pain in weight bearing joints.  Plaintiff was prescribed methotrexate.  R. 596-601.

The record also includes opinion evidence from State agency medical consultants Robert F. Schilling, Ph.D., James A. Brown, Ph.D.,

and Thomas Peele, M.D.  Each consultant opined that Plaintiff was

capable of performing work at the medium exertional level with appropriate

postural and mental limitations.  R. 104-16, 118-31.

### C.  Hearing Testimony

Plaintiff was 27 years old at the time of the hearing and resides with

her parents and two children.  Plaintiff has a high school education and a

drivers license.  She testified that she is unable to work due to pain in her

back, legs, and hands.  Plaintiff testified that she has sciatica, for which

she takes pain medication.  She previously underwent physical therapy but

could not recall when or where.  Plaintiff testified that she cannot sit more

than 20 or 30 minutes without having pain, and cannot walk more than a

block without stopping.  She does not use an assistive device.   She takes

methotrexate for hand pain.  R. 38-43.

At the time of the hearing, Plaintiff was five feet seven inches tall and

weighed 273 pounds.  She testified that she had gained almost 100

pounds since filing her application for SSI in 2012.  R. 53.  She testified

that hand pain limits her ability to open jars, use pans, tie shoes, and write.

R. 53-54.

With regard to daily activities, Plaintiff testified that she spends the

day alternating laying down and getting up due to back pain.  Her parents

help with her youngest child, including preparing meals.  Plaintiff watches

TV and sometimes reads for 10 or 15 minutes at a time.  Her grandmother

visits her, and Plaintiff also drives to her grandmother's house.  She drives

her older child to school sometimes.  Plaintiff does not do household

chores.  R. 56-58.

The VE testified that Plaintiff has no past relevant work.  The ALJ

posed alternative hypotheticals to the VE assuming an individual with the

RFC for a reduced range of medium work and a reduced range of light

work.  The VE identified jobs that Plaintiff could perform at the medium

exertional level and jobs at the light exertional level, including office helper,

marker, and mail clerk.  R. 59-62.

## IV.  DISCUSSION

Plaintiff argues, without elaboration, that the ALJ's RFC for light work

is not supported because a morbidly obese person with back pain and

radiculopathy could not stand for six out of eight hours a day as necessary

to maintain full employment.  Plaintiff also asserts, again without

elaboration, that the ALJ's credibility determination was "defective." [3] (ECF

---

[3] As the Commissioner argues, *see* ECF No. 22, such conclusory and
unsupported arguments may be deemed waived. *See N.L.R.B. v. McClain of Ga., Inc.*,

No. 20 at 27-29.)

## A.   *Substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform light work with additional limitations.*

The ALJ determined that Plaintiff has the RFC to perform light work

as defined in 20 C.F.R. § 416.967(b) (2017), with additional limitations.  A

claimant's RFC is the most a claimant can do, despite his limitations. 20

C.F.R. § 404.1545(a)(1). The RFC is based, not only on medical opinions,

but also the ALJ's review of all relevant evidence in the record. *Id.*; 20

C.F.R. § 404.1546.

Under SSR 83-10, "light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

---

138 F.3d 1418, 1422 (11th Cir. 1998) (noting issues "raised in a perfunctory manner, without supporting arguments and citation to authorities are generally deemed to be waived"); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (finding plaintiff waived an issue for failing to elaborate on the claim or provide citation to authority to support the claim). Nevertheless, in an abundance of caution the Court will address the merits of Plaintiff's claims.

Additionally, SSR 83-10 defines "frequent" as:

> occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

Substantial evidence supports the ALJ's determination that Plaintiff has the RFC to perform light work with additional limitations.

As an initial matter, the ALJ properly evaluated Plaintiff's obesity in assessing Plaintiff's RFC. The ALJ found that Plaintiff's severe impairments included obesity, but determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. R. 20.  The ALJ then wrote that he considered the effects that Plaintiff's obesity has on Plaintiff's ability to perform routine movement and necessary physical activity, in the context of the record as a whole and pursuant to the extensive and detailed guidelines of SSR 02-1p.  R. 21.

When evaluating obesity to assess a claimant's RFC, SSR 02-1p

provides, in pertinent part,

> [a]n assessment should also be made of the effect obesity has
> upon the individual's ability to perform routine movement and
> necessary physical activity within the work environment.
> Individuals with obesity may have problems with the ability to
> sustain a function over time. As explained in SSR 96-8p ("Titles
> II and XVI: Assessing Residual Functional Capacity in Initial
> Claims"), our RFC assessments must consider an individual's
> maximum remaining ability to do sustained work activities in an
> ordinary work setting on a regular and continuing basis. A
> "regular and continuing basis" means 8 hours a day, for 5 days
> a week, or an equivalent work schedule. In cases involving
> obesity, fatigue may affect the individual's physical and mental
> ability to sustain work activity. This may be particularly true in
> cases involving sleep apnea. The combined effects of obesity
> with other impairments may be greater than might be expected
> without obesity. For example, someone with obesity and
> arthritis affecting a weight-bearing joint may have more pain
> and limitation than might be expected from the arthritis alone. .
> . . . As with any other impairment, we will explain how we
> reached our conclusions on whether obesity caused any
> physical or mental limitations.

2002 WL 34686281 (Sept. 12, 2002).

The ALJ expressly stated that he undertook this evaluation and

determined that Plaintiff's obesity did not result in significant additional

impairments that were not accounted for in the RFC, which included

restrictions on bending, balancing, stooping, kneeling, crouching, crawling,

and climbing. *See* R. 20-21. Plaintiff specifically contends that her obesity

coupled with back pain and radiculopathy precludes her from standing for six hours in a workday, but she points to no objective medical evidence in the record that supports a conclusion that her obesity results in greater limitations than those assessed by the ALJ.

In view of the lack of any greater functional limitations suggested by the medical evidence, the Court concludes that the ALJ's determination is supported by substantial evidence.  *See Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (ALJ properly considered plaintiff's obesity in accordance with SSR 02-1p where ALJ determined plaintiff's obesity was a severe impairment but did not meet or equal a listing and then considered plaintiff's obesity in assessing the RFC).

## B.    *Substantial evidence supports the ALJ's credibility finding.*

At step four the ALJ must assess the claimant's RFC and her ability to return to past relevant work. § 404.1520(a)(4)(iv). The ALJ must take the claimant's medical evidence and other evidence into consideration in his RFC analysis. § 404.1520(e). If a claimant cannot return to her past relevant work, or has no past relevant work, the ALJ moves onto step five to determine if the claimant can adjust to other work. *Id.*; *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).

Under the Eleventh Circuit's pain standard, a claimant may establish her disability through her own testimony of pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1560–61 (11th Cir. 1995). The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard." *See Foote*, 67 F.3d at 1560. Under that test, evidence of an underlying medical condition must exist. *Id.* If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms. *Id.* A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Id.* at 1561.

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. §

404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors. §§ 404.1529(c)(1)–(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to her pain or symptoms. § 404.1529(c)(3). The ALJ then will examine the claimant's statements regarding her symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record. § 404.1529(c)(4).

If the ALJ decides not to credit the claimant's testimony as to her subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote*, 67 F.3d at 1561–62. While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was

incredible and could work are, alone, insufficient for the Court to conclude

that the ALJ considered the claimant's medical condition as a whole. *Id*. at

1562. The ALJ's articulated reasons must also be supported by substantial

evidence. *Jones v. Dep't of Health & Human Servs*., 941 F.2d 1529, 1532

(11th Cir. 1991). The Court will not disturb a properly articulated credibility

finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562.

The failure to articulate reasons for discrediting a claimant's subjective

testimony, however, requires that the testimony be accepted as true and

becomes grounds for remand where credibility is critical to the outcome of

the case*. Id.*

The ALJ is not required to recite the pain standard, but must make

findings that indicate the standard was applied. *Cooper v. Comm'r of Soc.

Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013). Whether objective medical

impairments could reasonably give rise to the alleged pain is a question of

fact for the Commissioner and the district court's review is limited to

ensuring substantial evidence supports the Commissioner's finding. *Landry

v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

In determining Plaintiff's RFC at step four, the ALJ found that

although Plaintiff's "medically determinable impairments could reasonably

be expected to cause the alleged symptoms," Plaintiff's "statements

concerning the intensity, persistence and limiting effects of these

symptoms are not entirely credible for the reasons explained in this

decision." R. 24.

The ALJ then went on to carefully and thoroughly explain his

rationale for finding that Plaintiff's statements not entirely credible.  First,

the ALJ pointed to Plaintiff's own description of her abilities as contained in

her pain questionnaire/report and function report, in which Plaintiff stated

that she cared for her personal needs, drove, shopped for necessities,

prepared simple meals, handled finances, and was able to follow written

and spoken instructions.  *See* R. 23, 334-36, 345-52.

The ALJ further observed that Plaintiff's hearing testimony reflected

that her medical treatment had been very conservative, consisting primarily

of medication management.  The ALJ also cited as a reason for not fully

crediting Plaintiff's complaints her hearing testimony in which she

"embellished" her weight by stating that she had gained almost 100 pounds

since applying for SSI when her application for benefits reflected

otherwise.  R. 24.  The ALJ further noted that Plaintiff's testimony

regarding her functional abilities was "vastly inconsistent" with the

examination notes in the record, which documented "countless" normal examinations.  *Id*.

The ALJ then went on to carefully review the medical evidence and the objective findings in the record that contradict Plaintiff's allegations of disabling symptoms.  *See* § 404.1529(c)(1) (explaining that in evaluating the intensity and persistence of a claimant's symptoms, the Commissioner considers all of the available evidence, including the "medical opinions of your treating source and other medical opinions").  The ALJ noted that there is no treating physician opinion sufficient to assess Plaintiff's RFC, and Plaintiff in this appeal does not argue otherwise.

The ALJ afforded great weight to Dr. Humphreys' consultative assessment, which noted Plaintiff's normal gait and assessed that she could perform normal activities.  The ALJ also afforded great weight to the opinions of the agency consultants, who determined that Plaintiff could perform work at the medium exertional level.  Nevertheless, the ALJ favorably credited Plaintiff's subjective complaints to the extent that the ALJ limited Plaintiff to an RFC for a reduced range of light work "out of an abundance of caution" and viewing Plaintiff's subjective complaints in a light most favorable to her.  R. 23-27.

The ALJ has wide latitude in evaluating the weight of evidence, particularly the credibility of witnesses. *Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984).  On this record, the Court concludes that the ALJ's credibility determination is supported by substantial evidence.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on the 1st day of March 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**